IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg

**BRENT CLARK**,

        Plaintiff,

v.                                         **Civil Action No. 3:23-CV-8**
                                                Judge Bailey

**OFFICER JONES; LIEUTENANT GUY;
LIEUTENANT MEYERS;** and
**LIEUTENANT MONTGOMERY**, all sued
in both their individual and official capacities,

        Defendants.

## ORDER DISMISSING CASE

Pending before this Court on initial review is Brent Clark's complaint against Officer Jones, Lieutenant Meyers, Lieutenant Montgomery and Lieutenant Guy [Doc. 1-2]. For the reasons stated below, this case will be dismissed.

On December 16, 2022, plaintiff Brent Clark filed a Complaint in the Circuit Court of Monongalia County, West Virginia, alleging that the four named defendants employed by the Bureau of Prisons, violated the plaintiff's Eighth Amendment rights by allowing unsafe conditions in the Special Housing Unit, while the plaintiff was an inmate at FCI Morgantown.

This case was removed to this Court on January 10, 2023. The Notice of Removal contains the following language:

> 3. Plaintiff brought the underlying state court civil action against the Defendants, all of whom were employees or officers of the United States and the Federal Bureau of Prisons, in official and/or individual capacity, for or relating to acts under color of such office. Specifically, Plaintiff alleges that the Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment by, *inter alia*, failing to respond to his request to remove his cellmate's mattress from the floor in or about December 2018 while he was designated to FCI Morgantown.
>
> 4. Pursuant to 28 U. S. C. § 1442(a)(1), a civil action that is commenced in a state court and that is against or directed to the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending.

[Doc. 1 at 2].

Inasmuch as this case is a suit for damages against federal actors acting in violation of the Constitution, it is a **Bivens** type action. **Bivens v. Six Unknown Agents of Federal Bureau of Narcotics**, 403 U.S. 388 (1971).

At the outset, this Court notes that the recent Supreme Court case of **Egbert v. Boule**, 142 S.Ct. 1793 (2022) "all but closed the door on **Bivens** remedies." **Dyer v. Smith**, 2022 WL 17982796, at *3 (4th Cir. Dec. 29, 2022).

> In ***Bivens***, the Court held that it had authority to create "a cause of action under the Fourth Amendment" against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations. 403 U.S. at 397. Although "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages," *id.*, at 396, 91 S.Ct. 1999, the Court "held that it could authorize a remedy under general principles of federal jurisdiction," ***Ziglar***, 582 U.S., at ——, 137 S.Ct., at 1854 (citing ***Bivens***, 403 U.S. at 392, 91 S.Ct. 1999). Over the following decade, the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, see ***Davis v. Passman***, 442 U.S. 228 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, see ***Carlson v. Green***, 446 U.S. 14 (1980).

***Egbert v. Boule***, 142 S.Ct. 1793, 1802 (2022).

Over the past 42 years, however, the Supreme Court has declined twelve (12) times to imply a similar cause of action for other alleged constitutional violations. *See* ***Chappell v. Wallace***, 462 U.S. 296 (1983); ***Bush v. Lucas***, 462 U.S. 367 (1983); ***United States v. Stanley***, 483 U.S. 669 (1987); ***Schweiker v. Chilicky***, 487 U.S. 412 (1988); ***FDIC v. Meyer***, 510 U.S. 471; ***Correctional Services Corp. v. Malesko***, 534 U.S. 61 (2001); ***Wilkie v. Robbins***, 551 U.S. 537 (2007); ***Hui v. Castaneda***, 559 U.S. 799 (2010); ***Minneci v. Pollard***, 565 U.S. 118 (2012); ***Ziglar v. Abbasi***, 582 U.S. ——, 137 S.Ct. 1843 (2017);

*Hernández v. Mesa*, 589 U.S. ——, 140 S.Ct. 735 (2020); and *Egbert v. Boule*, 142 S.Ct. 1793, 1799–800 (2022).

The Court, rather that dispensing with *Bivens* and its progeny altogether, has emphasized that a cause of action under *Bivens* is a "disfavored judicial activity." *Egbert*, 142 S.Ct. at 1803 (citing *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1856–1857 (internal quotation marks omitted); *Hernández*, 589 U.S., at ——, 140 S.Ct., at 742–743 (internal quotation marks omitted)).

In *Egbert*, the Supreme Court once again tiptoed around the ultimate issue — whether there is any remaining validity in the *Bivens* doctrine, while fashioning a standard which indicates that the *Bivens* action no longer exists.

In *Egbert*, the Court referenced the two part test for determining whether a *Bivens* type cause of action exists:

> To inform a court's analysis of a proposed *Bivens* claim, our cases have framed the inquiry as proceeding in two steps. See *Hernández*, 589 U.S., at ——, 140 S.Ct., at 742–743. First, we ask whether the case presents "a new *Bivens* context"—i.e., is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1859–1860. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1858 (internal quotation marks omitted). If there

is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy. *Hernández*, 589 U.S., at ——, 140 S.Ct., at 743.

*Egbert*, 142 S.Ct. at 1803.

In *Egbert*, the Supreme Court, without saying as much, appears to have significantly modified the two-step *Ziglar* test:

> While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. For example, we have explained that a new context arises when there are "potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1860. And we have identified several examples of new contexts—*e.g.*, a case that involves a "new category of defendants," *Malesko*, 534 U.S. at 68, 122 S.Ct. 515; *see also Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1876—largely because they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action. We have never offered an "exhaustive" accounting of such scenarios, however, because no court could forecast every factor that might "counse[l] hesitation." *Id.*, at ——, 137 S.Ct., at 1880. Even in a particular case, a court likely cannot predict the "systemwide" consequences of recognizing a cause of action under *Bivens*. *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1858. That uncertainty alone is a special factor that forecloses

relief. See *Hernández v. Mesa*, 885 F.3d 811, 818 (C.A.5 2018) (en banc) ("The newness of this 'new context' should alone require dismissal"). *Egbert*, 142 S.Ct. at 1803–04.

The question left unanswered is whether the "single question" test removes the issue of whether the cause of action is a new context. This Court believes that it does for several reasons.

First, the *Egbert* decision notes that the Court has "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power,' *Hernández*, 589 U.S., at ——, 140 S.Ct., at 741. At bottom, creating a cause of action is a legislative endeavor. Courts engaged in that unenviable task must evaluate a 'range of policy considerations ... at least as broad as the range ... a legislature would consider.' *Bivens*, 403 U.S. at 407 (Harlan, J., concurring in judgment); see also *post*, at 1809 - 1810 (GORSUCH, J., concurring in judgment)." *Egbert*, 142 S.Ct. at 1802.

Second, the Court states that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.*, at 1809.

Third, the *Egbert* Court notes that it has indicated that if it were called to decide *Bivens* today, it would decline to discover any implied causes of action in the Constitution. *Id*. (citing *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1855).

Finally, and most importantly, Justice Gorsuch's concurring opinion indicates such.

6

In his concurrence, Justice Gorsuch starts with the statement that "Our Constitution's separation of powers prohibits federal courts from assuming legislative authority. As the Court today acknowledges, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), crossed that line by 'impl[ying]' a new set of private rights and liabilities Congress never ordained. *Ante*, at 1802 - 1803; *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *Nestlé USA, Inc. v. Doe*, 593 U.S. ——, 141 S.Ct. 1931, 1942–1943 (2021) (GORSUCH, J., concurring)." *Egbert*, 142 S.Ct. at 1809 (Gorsuch, J., concurring).

Justice Gorsuch adds:

Recognizing its misstep, this Court has struggled for decades to find its way back. Initially, the Court told lower courts to follow a "two ste[p]" inquiry before applying *Bivens* to any new situation. . . At the first step, a court had to ask whether the case before it presented a "new context" meaningfully different from *Bivens*. . . At the second, a court had to consider whether " 'special factors' " counseled hesitation before recognizing a new cause of action. . . But these tests soon produced their own set of questions: What distinguishes the first step from the second? What makes a context "new" or a factor "special"? And, most fundamentally, on what authority may courts recognize new causes of action even under these standards?

Today, the Court helpfully answers some of these lingering questions. It recognizes that our two-step inquiry really boils down to a "single question": Is there "any reason to think Congress might be better equipped" than a

court to " 'weigh the costs and benefits of allowing a damages action to proceed' "?; see *Ziglar v. Abbasi*, 582 U.S. 120, —— – ——, 137 S.Ct. 1843, 1858. But, respectfully, resolving that much only serves to highlight the larger remaining question: When might a court *ever* be "better equipped" than the people's elected representatives to weigh the "costs and benefits" of creating a cause of action?

It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation. See *Sandoval*, 532 U.S. at 286–287; *Nestlé*, 593 U.S., at ——, 141 S.Ct., at 1942–1943 (GORSUCH, J., concurring); *Jesner v. Arab Bank, PLC*, 584 U.S. ——, ——, 138 S.Ct. 1386, 1392 (2018) (GORSUCH, J., concurring in part and concurring in judgment). If exercising that sort of authority may once have been a " 'proper function for common-law courts' " in England, it is no longer generally appropriate " 'for federal tribunals' " in a republic where the people elect representatives to make the rules that govern them. *Sandoval*, 532 U.S. at 287. Weighing the costs and benefits of new laws is the bread and butter of legislative committees. It has no place in federal courts charged with deciding cases and controversies under existing law.

Instead of saying as much explicitly, however, the Court proceeds on to conduct a case-specific analysis. And there I confess difficulties. The plaintiff is an American citizen who argues that a federal law enforcement

officer violated the Fourth Amendment in searching the curtilage of his home. Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself. To be sure, as the Court emphasizes, the episode here took place near an international border and the officer's search focused on violations of the immigration laws. But why does that matter? The Court suggests that Fourth Amendment violations matter less in this context because of "likely" national-security risks... So once more, we tote up for ourselves the costs and benefits of a private right of action in this or that setting and reach a legislative judgment. To atone for *Bivens*, it seems we continue repeating its most basic mistake.

Of course, the Court's real messages run deeper than its case-specific analysis. If the costs and benefits do not justify a new *Bivens* action on facts so analogous to *Bivens* itself, it's hard to see how they ever could. And if the only question is whether a court is "better equipped" than Congress to weigh the value of a new cause of action, surely the right answer will always be no. Doubtless, these are the lessons the Court seeks to convey. I would only take the next step and acknowledge explicitly what the Court leaves barely implicit. Sometimes, it seems, "this Court leaves a door ajar and holds out the possibility that someone, someday might walk through it" even as it devises a rule that ensures "no one ... ever will." *Edwards v. Vannoy*, 593 U.S. ––––, ––––, 141 S.Ct. 1547, 1566 (2021) (GORSUCH, J., concurring). In fairness to future litigants and our lower

9

>court colleagues, we should not hold out that kind of false hope, and in the process invite still more "protracted litigation destined to yield nothing." *Nestlé*, 593 U.S., at ——, 141 S.Ct., at 1943 (GORSUCH, J., concurring). Instead, we should exercise "the truer modesty of ceding an ill-gotten gain," *ibid.*, and forthrightly return the power to create new causes of action to the people's representatives in Congress.

142 S.Ct. 1809–1810 (Gorsuch, J., concurring).

Based upon the foregoing, this Court believes that the *Bivens* type of action is no longer viable, whether a new context or not. It is clear, however, that those on the Fourth Circuit do not agree. In the two Fourth Circuit cases decided since *Egbert*, the Fourth Circuit has applied the "two-step new context test." *See Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022) and *Dyer v. Smith*, 2022 WL 17982796 (4th Cir. Dec. 29, 2022). Accordingly, this Court will address the two *Ziglar* factors.

The first factor is whether the proffered cause of action constitutes a new context under *Bivens*. "In determining whether a case presents a new *Bivens* claim, 'a radical difference is not required' to make a case meaningfully different from the three cases in which the Court has recognized a *Bivens* remedy. *Tun-Cos* [*v. Perrotte*], 922 F.3d [514,] at 523 [(4th Cir. 2019)]. The Supreme Court has explained:

>A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other

> legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S.Ct. at 1860." *Dyer*, 2022 WL 17982796, at *3.

The plaintiff's claims regarding removal of a mattress is clearly a new context. "The differences between [the *Abbasi* plaintiffs' prisoner abuse claims] and the one in *Carlson* are perhaps small, at least in practical terms. Given this Court's expressed caution about extending the *Bivens* remedy, however, the new-context inquiry is easily satisfied. . . ." *Ziglar*, 137 S.Ct. at 1865. Furthermore, the facts of this case are in no way similar to those of the *Bivens* trilogy.

Inasmuch as this case presents a new context, this Court "must proceed to the 'second step and ask whether there are any special factors that counsel hesitation about granting the extension' of *Bivens*. *Hernandez*, 140 S.Ct. at 743 (cleaned up). And if there is 'reason to pause before applying *Bivens* in a new context or to a new class of defendants,' the request to extend *Bivens* should be rejected. *Id*. Moreover, the Court has directed that the 'special factors' inquiry must center on 'separation-of-powers principles.' *Id*. (quoting *Ziglar*, 137 S.Ct. at 1857). As the Court explained:

> We thus consider the risk of interfering with the authority of other branches, and we ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary

11

is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'"

***Tate v. Harmon***, 54 F.4th 839, 844–45 (4th Cir. 2022).

"As the ***Egbert*** Court noted:

The ***Bivens*** inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is ***any*** rational reason (even one) to think that ***Congress*** is better suited to weigh the costs and benefits of allowing a damages action to proceed."

***Id***. at 848 (emphasis in original) (quoting ***Egbert***, 142 S.Ct. at 1805 (cleaned up)).

"In considering the special factors, we evaluate 'whether Congress **might doubt** the need for an implied damages remedy,' ***Tun-Cos***, 922 F.3d at 525 (emphasis in original), or if there is 'reason to pause' before extending ***Bivens*** to new contexts, ***Hernandez v. Mesa***, ––– U.S. –––, 140 S.Ct. 735, 743 (2020). '"A single sound reason to defer to Congress" is enough to require a court to refrain from creating [a damages] remedy.' ***Egbert***, 142 S.Ct. at 1803 (quoting ***Nestlé USA, Inc. v. Doe***, ––– U.S. –––, 141 S.Ct. 1931, 1937 (2021) (plurality opinion)). 'Put another way, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?"' ***Egbert***, 142 S.Ct. at 1803 (quoting ***Hernandez***, 140 S.Ct. at 750). 'If there is a rational reason to think that the answer is Congress - **as it will be in most every case** ... —no ***Bivens*** action may lie.' ***Egbert***, 142 S.Ct. at 1803 (internal citation omitted)." ***Dyer***, 2022 WL 17982796, at *4.

"While the Supreme Court has not provided a comprehensive list of special factors, courts are instructed to consider 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.' *Ziglar*, 137 S.Ct. at 1858. Courts are also instructed to look to whether 'there is an alternative remedial structure present in a certain case.' *Id*. An alternative remedy weighs against recognizing a new *Bivens* claim even if it is less effective than the damages that would be available under *Bivens* and is not expressly identified by Congress as an alternative remedy. *Id*.; *Egbert*, 142 S.Ct. at 1804, 1807." *Id*.

Other factors to be considered include "'economic and governmental concerns,' 'administrative costs,' and the 'impact on governmental operations systemwide.' *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1856, 1858. Unsurprisingly, Congress is 'far more competent than the Judiciary' to weigh such policy considerations. *Schweiker*, 487 U.S. at 423. And the Judiciary's authority to do so at all is, at best, uncertain. *See, e.g., Hernández*, 589 U.S., at ——, 140 S.Ct., at 742." *Egbert,* 142 S.Ct. at 1802–03.

The *Egbert* Court made it clear that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.' *Ziglar*, 582 U.S., at——, 137 S.Ct., at 1858; *see also Schweiker*, 487 U.S. at 425. If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.' *Ziglar*, 582 U.S., at ——, 137 S.Ct., at 1858." *Id*. at 1804.

In *Correctional Services Corp. v. Malesko*, 534 U.S. at 74, the Court held that *Bivens* type relief is unavailable to federal prisoners because they could, among other

options, file grievances through the Administrative Remedy Program.  *See also **Egbert***, 142 S.Ct. at 1806.  This holding alone would appear to bar any ***Bivens*** type action brought by a federal prisoner.

A further reason not to find a ***Bivens*** type remedy is that it "risks transforming the courts into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury."  *See* ***Washington v. Fed. Bureau of Prisons***, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) (Hendricks, J.).

The above factors provide a myriad of reasons to hesitate extending ***Bivens*** to this case.  Accordingly, this Court finds that there is no viable cause of action under ***Bivens*** and its progeny, requiring dismissal.

Even if this type of claim were still valid, Mr. Clark's claims against the four defendants are clearly barred by the applicable statute of limitations, which in West Virginia is two (2) years.  Inasmuch as Mr. Clark complains of events that occurred in December of 2018, his claims are clearly barred.

For the foregoing reasons, this action is **DISMISSED**.

The Clerk is hereby **DIRECTED** to **STRIKE** the above-styled case from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to mail a copy to the *pro se* plaintiff.

**DATED**: January 18, 2023.

                                                **JOHN PRESTON BAILEY**
                                                **UNITED STATES DISTRICT JUDGE**